William W. Flachsbart (*pro hac vice* pending)
wwf@fg-law.com
Michael R. La Porte (*pro hac vice* pending)
mrl@fg-law.com
Flachsbart & Greenspoon, LLC
333 N. Michigan Ave. Ste. 2700
Chicago, IL 60601
Telephone:  (312) 551-9500
Facsimile:    (312) 551-9501

H. H. (Shashi) Kewalramani (Bar No. 262290)
shashi@shklegal.com
SHK Legal, APC
2603 Main Street, Suite 350
Irvine, CA 92614
Telephone:  (714) 335-4590
Facsimile:    (714) 602-9290

Attorneys for Plaintiff Anton Innovations, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| ANTON INNOVATIONS, INC.<br><br>      Plaintiff,<br><br>  v.<br><br>GETAC, INC. and GETAC<br>TECHNOLOGY CORPORATION<br><br>     Defendants. | Case No.  SA CV 16-1850<br><br><br>**[JURY DEMANDED]** |

     Plaintiff Anton Innovations, Inc. ("Anton"), complains of the Getac Defendants as follows:

/ / /

/ / /

---

**COMPLAINT**

JURISDICTION AND VENUE

1.      Title 28 of the United States Code Section 1338(a) confers subject matter jurisdiction on this Court because Defendants have infringed Plaintiff's patent. The Patent Act of 1952, as amended, 35 U.S.C. § 271, *et seq.*, makes patent infringement actionable through a private cause of action.

2.      Defendants have transacted business in the State of California, and in this judicial district by making, using, selling, or offering to sell and providing technology and services that infringe Anton's patents. By way of example only, Defendants made, used, and sold the S400 and X500 ruggedized notebook computers, the E100 ruggedized tablet, the V100 convertible notebook/tablet, and the PS336 and PS535F handheld devices, all of which contain multi-modal wireless transceivers, which are configurable by their users to be responsive to different modes and frequencies of wireless communications, and responsive to a variety of user criteria, including security.

3.      Venue is proper in the Central District of California under the general federal venue statute, 28 U.S.C. § 1391(d), and under the specific venue provision relating to patent infringement cases, 28 U.S.C. § 1400(b).

PARTIES

4.      Anton is a Delaware corporation with its principal place of business at 600 Anton Blvd. Suite 1350, Costa Mesa, California 92626. Anton is a subsidiary of Wi-LAN Technologies Inc. Anton is the assignee and owns all right, title and interest in and has standing to sue for infringement of U.S. Patent Nos. 7,386,322, 6,934,558, 6,134,453, and 5,854,985 ("the Anton Patents").[1] The predecessor owner and assignee is MLR, LLC. The Anton Patents are attached as Exhibit A.

---

[1] This Complaint refers to these patents as the "Anton Patents." Because of MLR's prior licensing and litigation involving these patents, there are numerous documents, including correspondence related to Getac that refer to these same patents as the "MLR Patents."

2

**COMPLAINT**

5.     Upon information and belief, Defendant Getac Technology Corporation is a Taiwanese corporation with its principal place of business believed to be at 4F, No. 1, R&D 2nd Road, Hsinchu Science Park, Hsinchu County, Taiwan, R.O.C. Upon information and belief, Defendant Getac Inc. is a California corporation with its principal place of business at 400 Exchange, Suite 100, Irvine, California 92602. Defendants have previously made, used, sold, offered for sale, and/or imported into the United States computer devices that infringe the Anton Patents. Defendants have also infringed the Anton Patents through acts of inducement in violation of 35 U.S.C. § 271.

BACKGROUND

6.     Anton owns patents that covered commercially significant technologies related to the control of multi-mode, multi-frequency, and multi-protocol networks for electronic communications devices. The Anton patents, for example, covered portable wireless devices, such as cellular handsets and portable computers, which can access different cellular or wireless networks to facilitate wireless voice and/or data communications.

7.     Defendants sold portable computers and mobile telephones (among others, the accused devices listed in Exhibit B to this Complaint) to people in the United States. Defendants specialize in a niche part of the mobile and portable device market that includes ruggedized devices – namely, computer devices designed with extra protection to allow them to endure harsh treatments and environments from users. Getac has sold many of these devices.

8.     Getac has knowledge of the Anton patents and the infringement of those patents. Getac has known of the existence of the Anton patents for many years prior to this lawsuit. On December 30, 2011, inventor/co-inventor (and President of the predecessor-owner – "MLR" – of the Anton Patents) Charles Leedom sent a notice of infringement to Getac's President James Hwang and Getac USA's President, Jim Rimay. Shortly thereafter, Getac's Vicky Kuo identified herself to Leedom as the point person for discussions.

**COMPLAINT**

9.     After exchanging several email messages, Ms. Kuo told Mr. Leedom that there were "too many patents for our review" and invited Leedom to send a licensing offer.

10.    MLR and Getac then negotiated a non-disclosure agreement to facilitate discussions. That NDA was completed in late August 2012.

11.    With the NDA completed, Leedom asked for Getac's sales information so that he could prepare a licensing offer. On January 17, 2013, Mr. Leedom also provided detailed claim charts to Ms. Kuo regarding the Anton Patents.

12.    Having never received any substantive response to the notice of infringement or to the claim charts, Mr. Leedom turned this matter over to outside counsel.

13.    On July 24, 2014, outside counsel first contacted Ms. Kuo to introduce themselves and continue licensing negotiations. Over the course of the next 18 months, which involved numerous email contacts and telephone calls, MLR and Getac negotiated a mutually-agreeable "form license" containing all terms except financial terms. The parties, however, made very little progress towards the financial terms of a license.

14.    At no time, throughout all of its communications with Mr. Leedom and with MLR's outside counsel, has Getac ever articulated any basis for non-infringement or raised any issue of validity of the Anton Patents.

**PATENT INFRINGEMENT**

15.    Defendants have infringed at least claim 1 of the '985 Patent, claims 1 and 5 of the '453 Patent, claim 1 of the '558 Patent, and claims 5 and 16 of the '322 Patent, among others, in violation of 35 U.S.C. § 271 through, among other activities, making, using (for example by testing), offering to sell, and/or selling the computer devices listed in Exhibit B ("Accused Products").

16.    Defendants' customers (and Defendants themselves, through product testing, among other things) directly infringed the Anton Patents when using Defendants' portable computers and mobile device products.

4
**COMPLAINT**

**Direct Patent Infringement**

17.    Getac made, used, sold, and offered for sale multi-modal devices that contained frequency-agile and protocol-agile transceivers. These devices facilitated communication over a plurality of wireless communication networks, operating at a given time and location, using different frequencies and different protocols such as different 802.11 network protocols (*e.g.* 802.11a, 802.11b, 802.11g and 802.11n) and different broadband network protocols (*e.g.* 3G and 4G/LTE). Each of the Accused Products also contained the circuitry necessary to connect and facilitate the identification, selection, and connection of the Accused Products to available wireless communications networks. Getac's multi-modal devices include notebooks, tablets, and handheld communication devices.

18.    These Accused Products also included software that controlled the manner in which the devices connected to different wireless communications networks, such as the software included in the Windows 7, Windows Vista, or the Google Android operating systems, provided or downloaded from third parties such as Intel or Verizon, upon Getac's invitation, which software was capable of controlling connections to various wireless communications networks in response to criteria determined by the device user.

19.    Some of these Wi-Fi capable portable devices were also supplied by Getac with wireless broadband capability enabled by built-in wireless broadband modules and broadband connection manager software (such as Windows 7, Vista or Mobile) that were adapted to access different cellular networks using different frequencies and protocols.

20.    An even more detailed, claim-element-by-claim-element explanation of Getac's infringement of the Anton Patents is also included in the claim charts that Anton's predecessor, MLR, sent to Getac, which charts are incorporated herein by reference.

**Infringement of the '322 Patent**

21.    Defendants have infringed at least claims 5 and 16 of the '322 Patent in violation of 35 U.S.C. § 271 through, among other activities, making, using, offering to sell,

and/or selling the Accused Products.

22.    Defendants' infringing technology and products include without limitation their A790, B300, M220, M230, S400, S410, V100, V110, V200, and X500 laptops and convertible notebooks, their E100, E110, F110, RX10, RX10H, T800, and Z710 tablets, their X500 Server, and their PS236, PS336, and PS535F handheld devices.

23.    Claim 5 is an exemplary infringed claim. Its preamble states "A multi-modal device for facilitating wireless communication over any one of a plurality of wireless communication networks operating pursuant to differing transmission protocols and/or over differing radio frequencies, comprising:." This is the preamble of the claim, and not a limitation that needs to be satisfied to show infringement. Generally speaking, however, Getac supplies multi-modal devices that facilitate communication over a plurality of wireless communication networks, operating at a given time and location, using different frequencies and different transmission protocols such as different 802.11 network protocols (*e.g.* 802.11a, 802.11b, 802.11g and 802.11n) and different broadband network protocols (*e.g.* 3G and 4G/LTE).

24.    The Getac devices, listed above, have embedded Wi-Fi modules and operating system software (such as Windows 7, Windows Vista or Google Android) and other Wi-Fi network access control software that control access to different Wi-Fi networks. Some of these Wi-Fi capable portable devices are also supplied by Getac with wireless broadband capability enabled by built-in wireless broadband modules and broadband connection manager software (such as Windows 7, Windows Vista, Windows Mobile, or Google Android) that are adapted to access different cellular networks using different frequencies and protocols.

25.    Getac's Wi-Fi and broadband capable portable computers include multi-modal wireless components that facilitate wireless communication over any one of a plurality of wireless communication networks (*e.g.* Wi-Fi networks and/or 3G and 4G/LTE

6

**COMPLAINT**

networks) at least some of which may be available and operating at a given time and location using differing radio frequency modulation protocols and using differing radio frequencies.

26.    After the preamble, the first limitation of claim 5 states "a frequency agile radio transceiver adapted to operate at a radio frequency appropriate for each of the plurality of wireless communication networks as determined by a frequency control signal."

27.    The Getac Wi-Fi capable and broadband capable portable computers, such as the V110, include frequency agile radio transceivers each of which operates at any one frequency of a plurality of radio frequencies appropriate for each of the plurality of wireless communication networks being accessed by that transceiver, which is or can be selected in response to a frequency control signal. When combined with the Intel Centrino Advanced-N 6235 module and the Gobi 2000 module, the Getac V110 portable computer includes dual Tx and Rx radios capable of operating in the 2.4 GHz and 5.0 GHz frequency bands assigned to Wi-Fi communications in the United States and a Qualcomm RTR6500 CDMA2k/EV-DO transceiver chip and a Qualcomm RTR6285 GSM/HSDPA transceiver chip that send and receive radio broadcast signals in the following bands: 800 MHz, 850 MHz, 1800 MHz, 1900 MHz and 2100 MHz.

28.    In particular, the Qualcomm RTR6285 transceiver chip provides global roaming capabilities with multi-band functionality when connected with a Qualcomm processor such as Qualcomm's MSM7200, MSM6280, MSM6255 or MSM6245 controller chips all as illustrated in the following schematic:

/ / /

/ / /

/ / /

/ / /

/ / /

**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11



12    29.    Getac provides each of its Wi-Fi and broadband capable computers with
13  multiple antennas adapted to be connected with the corresponding transceiver circuitry as
14  noted above. Getac's portable computers that are adapted to be combined with a built-in
15  broadband module are equipped by Getac with multiple antennas placed inside the
16  notebook. For example, the technical specifications for the V110 show that it contains the
17  following:  Bluetooth, v2.1+EDR Class 2, WLAN, 802.11 ac, WWAN (3G and 4G LTE)
18  and dedicated GPS.

19    30.    After the first limitation, the second limitation of claim 5 states "a digital
20  interface circuit for interconnecting said frequency agile radio transceiver with external
21  devices to allow information to be sent and received over said frequency agile radio
22  transceiver."

23    31.    Getac's exemplary V110 laptop, and indeed each of the Accused Products
24  meets this limitation. The transceivers are identified in ¶ 27, *supra*. Each of the Tx and Rx
25  radios of the Intel Centrino modules contained in the Accused Products is connected with a

26

27                                         8
28                                  **COMPLAINT**

baseband circuit through corresponding ADCs (analog to digital converters) and DACs (digital to analog converters) to allow digital signal information to be sent and received over corresponding frequency agile radio transceivers. As a further example, the Qualcomm MSM family of microprocessors includes an ARM926 processor and QDSP5 and QDSP4 DSPs (digital signal processors) as shown in the schematic above in ¶ 28. An ARM926 processor is part of a family of microprocessors allowing a trade-off between high performance and high code density. The QDSP5 and QDSP4, contained in some of the Accused Products, are digital signal processors developed by Qualcomm for digital communications applications. Upon information and belief, the ADCs / DACs / SSBI components perform the function of a digital interface circuit for interconnecting the frequency agile radio transceiver with external digital signal processing devices to allow digital signal information to be sent and received over said frequency agile radio transceiver.

32.   After the second limitation, the third limitation of claim 5 states "protocol agile operating circuit means for operating said frequency agile radio transceiver and said digital interface circuit in accordance with one of the transmission protocols as determined by a protocol control signal."

33.   The Getac Accused products have protocol operating circuit means that operate the transceivers and circuits noted above. For example, the Intel N6235 module present in various Getac products, includes a diplexer that works with the antenna, power amplifier, mixer, and local oscillator in the Accused Products in response to a signal indicating the proper protocol to be used. The presence of this claim element is shown by the fact that each Getac Wi-Fi capable computer, tablet, and handheld device is able to automatically access different 802.11 networks using appropriate 802.11(a, b, g, n, and/or ac) protocols and because the Getac broadband capable computers are able to

automatically access various networks using appropriate protocols such as GPRS, EDGE and GSM.

34.     After the third limitation, the fourth and final limitation of claim 5 states "adaptive control means for accessing a selected wireless communication network and for generating the frequency control signal and the protocol control signal in response to a user defined criteria to cause the device to communicate with the selected wireless communication network using the frequency determined by the frequency control signal and the protocol determined by the protocol control signal."

35.     The Getac Wi-Fi capable computers undertake an exchange with base stations to determine which wireless communications networks are available at a given location and time, and thus to ultimately access a selected wireless communication network as well as to generate the frequency control signal and the protocol control signal in response to a user defined criteria to cause the device to communicate with the selected wireless communication network using the frequency and modulation protocol suitable for transmission of said signal information over said selected wireless communication network.

36.     The control signals act in response to device user's defined criteria for connection. As an example, the Getac operating systems allow the user to change security settings of Getac's Wi-Fi capable devices to define a user criteria for selecting a network through implementation of a dynamic negotiation of authentication and encryption algorithms between access points and mobile devices known as RSN under the 802.11i standards adopted by the IEEE. Advanced settings also allow for control over roaming (based on the quality of the signal) when automatically accessing Wi-Fi wireless networks in Windows 7 and Vista.

37.     As a direct and proximate consequence of Defendants' infringement, Anton has been injured in its business and property rights, and has suffered injury and damages

**COMPLAINT**

for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate for such infringement, but in no event less than a reasonable royalty.

## Infringement of the '558 Patent

38.    Defendants have infringed at least claim 1 of the '558 Patent in violation of 35 U.S.C. § 271 through, among other activities, making, using, offering to sell, and/or selling the Accused Products.

39.    Defendants' infringing technology and products include without limitation their A790, B300, M220, M230, S400, S410, V100, V110, V200, and X500 laptops and convertible notebooks, their E100, E110, F110, RX10, RX10H, T800, and Z710 tablets, their X500 Server, and their PS236, PS336, and PS535F handheld devices.

40.    Claim 1 is an exemplary infringed claim. Its preamble states "A multi-modal device for facilitating wireless communication over any one of a plurality of wireless communication networks at least some of which may be available and operating at a given time and location using differing radio frequency modulation protocols and over differing radio frequencies, comprising." This is the preamble of the claim, and not a limitation that needs to be satisfied to show infringement. Generally speaking, however, Getac supplies multi-modal devices that facilitate communication over a plurality of wireless communication networks, operating at a given time and location, using different frequencies and different transmission protocols such as different 802.11 network protocols (*e.g.* 802.11a, 802.11b, 802.11g and 802.11n) and different broadband network protocols (*e.g.* 3G and 4G/LTE).

41.    The Getac devices, listed above, have embedded Wi-Fi modules and operating system software (such as Windows 7, Windows Vista, or Google Android) and other Wi-Fi network access control software that control access to different Wi-Fi networks. Some of these Wi-Fi capable portable devices are also supplied by Getac with wireless broadband capability enabled by built-in wireless broadband modules and broadband connection

11

**COMPLAINT**

manager software (such as Windows 7, Vista or Mobile) that are adapted to access different cellular networks using different frequencies and protocols.

42.     Getac's Wi-Fi and broadband capable portable computers include multi-modal wireless components that facilitate wireless communication over any one of a plurality of wireless communication networks (*e.g.* Wi-Fi networks and/or 3G and 4G/LTE networks) at least some of which may be available and operating at a given time and location using differing radio frequency modulation protocols and using differing radio frequencies.

43.     After the preamble, the first limitation of claim 1 states "a frequency agile radio transceiver capable of operating at any frequency or frequencies appropriate for each of the plurality of wireless communication networks, said frequency or frequencies selected in response to a frequency control signal."

44.     The Getac Accused Products include frequency agile transceivers as set forth above in ¶¶ 27-29.

45.     After the first limitation, the second limitation of claim 1 states "an interface circuit for interconnecting said frequency agile radio transceiver with an external signal circuit to allow signal information to be sent and received over said frequency agile radio transceiver."

46.     The Getac Accused Products include an interface circuit as required by this claim element as set forth above in ¶ 31.

47.     After the second limitation, the third limitation of claim 1 states "a protocol agile operating circuit for operating said frequency agile radio transceiver and said interface circuit in accordance with any one modulation protocol of a plurality of modulation protocols, said one modulation protocol selected in response to a protocol control signal."

48.     The Getac Accused Products include a protocol agile operating circuit as set forth above in ¶ 33.

**COMPLAINT**

49.     After the third limitation, the fourth limitation of claim 1 states "adaptive control circuit for determining which wireless communications networks are available at a given location and time, for accessing a selected wireless communication network, and for generating the frequency control signal and the protocol control signal in response to a user defined individual priority to cause the device to communicate with the selected wireless communication network using the frequencies and modulation protocol suitable for transmission of said signal information over said selected wireless communication network."

50.     The Getac Accused Products include an adaptive control circuit as set forth above in ¶¶ 35-36.

51.     After the fourth limitation, the fifth limitation of claim 1 states "input means for receiving and storing the user defined individual priority for selecting among the plurality of wireless communication networks and for allowing subsequent changes by the user of the stored user defined individual priority whenever desired by the user, said user defined individual priority defining which one of the wireless communication networks is accessed among the wireless communication networks that are determined by said adaptive control circuit to be available."

52.     Each above identified Getac Wi-Fi capable and broadband capable computers employs a keyboard or touchscreen for receiving (and forwarding to memory for storage) user commands and requests for information. The keyboard or touchscreen can be used to enter user defined criteria for controlling network access, including criteria for controlling fast roaming as implemented by the Windows and Vista operating systems or cost-control settings inserted through the keyboard that are processed and used by the broadband connection-manager software that comes pre-installed by Getac in its broadband capable computers.

53.     After the fifth limitation, the sixth and final limitation of claim 1 states "wherein said adaptive control circuit operates to generate said frequency control signal

13

**COMPLAINT**

and said protocol control signal appropriate for the wireless communication network that is determined by said adaptive control circuit to be available and satisfies said user defined individual priority."

54.   The Getac Accused Products include an adaptive control circuit that generates a frequency control signal and a protocol control signal as set forth above in ¶¶ 35-36.

55.   As a direct and proximate consequence of Defendants' infringement, Anton has been injured in its business and property rights, and has suffered injury and damages for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate for such infringement, but in no event less than a reasonable royalty.

## Infringement of the '453 Patent

56.   Defendants have infringed at least claims 1 and 5 of the '453 Patent in violation of 35 U.S.C. § 271 through, among other activities, making, using, offering to sell, and/or selling the Accused Products.

57.   Defendants' infringing technology and products include without limitation their A790, B300, M220, M230, S400, S410, V100, V110, V200, and X500 laptops and convertible notebooks, their E100, E110, F110, RX10, RX10H, T800, and Z710 tablets, their X500 Server, and their PS236, PS336, and PS535F handheld devices.

58.   Claim 1 is an exemplary infringed claim. Its preamble states "A multi-modal device for facilitating wireless communication over any one of a plurality of wireless communication networks at least some of which may be available and operating at a given time and location using differing radio frequency modulation protocols and over differing radio frequencies, comprising:." This is the preamble of the claim, and not a limitation that needs to be satisfied to show infringement. Generally speaking, however, Getac supplies multi-modal devices that facilitate communication over a plurality of wireless communication networks, operating at a given time and location, using different frequencies and different transmission protocols such as different 802.11 network protocols

14

**COMPLAINT**

(*e.g.* 802.11a, 802.11b, 802.11g and 802.11n) and different broadband network protocols (*e.g.* 3G and 4G/LTE).

59.    The Getac devices, listed above, have embedded Wi-Fi modules and operating system software (such as Windows 7, Windows Vista, or Google Android) and other Wi-Fi network access control software that control access to different Wi-Fi networks. Some of these Wi-Fi capable portable devices are also supplied by Getac with wireless broadband capability enabled by built-in wireless broadband modules and broadband connection manager software (such as Windows 7, Vista or Mobile) that are adapted to access different cellular networks using different frequencies and protocols.

60.    Getac's Wi-Fi and broadband capable portable computers include multi-modal wireless components that facilitate wireless communication over any one of a plurality of wireless communication networks (*e.g.* Wi-Fi networks and/or 3G and 4G/LTE networks) at least some of which may be available and operating at a given time and location using differing radio frequency modulation protocols and using differing radio frequencies.

61.    After the preamble, the first limitation of claim 1 states "a frequency agile radio transceiver operating at any frequency of a plurality of radio frequencies appropriate for each of the plurality of wireless communication networks, said frequency selected in response to a frequency control signal."

62.    The Getac Accused Products include frequency agile transceivers as set forth above in ¶¶ 27-29.

63.    After the first limitation, the second limitation of claim 1 states "an interface circuit for interconnecting said frequency agile radio transceiver with an external signal circuit to allow signal information to be sent and received over said frequency agile radio transceiver."

**COMPLAINT**

64.     The Getac Accused Products include an interface circuit as required by this claim element as set forth above in ¶ 31.

65.     After the second limitation, the third limitation of claim 1 states "a protocol agile operating circuit for operating said frequency agile radio transceiver and said interface circuit in accordance with any one modulation protocol of a plurality of modulation protocols, said one modulation protocol selected in response to a protocol control signal."

66.     The Getac Accused Products include a protocol agile operating circuit as set forth above in ¶ 33.

67.     After the third limitation, the fourth limitation of claim 1 states "adaptive control circuit for determining which wireless communications networks are available at a given location and time, for accessing a selected wireless communication network, for communicating with said selected wireless communication network to determine on a real time basis the operating characteristics of the wireless communication network, and for generating the frequency control signal and the protocol control signal in response to a user defined criteria to cause the device to communicate with the selected wireless communication network using the frequencies and modulation protocol suitable for transmission of said signal information over said selected wireless communications network."

68.     The Getac Accused Products include an adaptive control circuit as set forth above in ¶¶ 35-36.

69.     After the fourth limitation, the fifth limitation of claim 1 states "input means for receiving said user defined criteria, said user defined criteria comprising at least one of the cost of using the wireless communication network, the quality of the wireless communication network, the potential for being dropped by the wireless communication network, and the security of the wireless communication network."

70.     The Getac Accused Products include input means as set forth in ¶ 52.

**COMPLAINT**

71.    After the fifth limitation, the sixth and final limitation of claim 1 states "wherein said adaptive control circuit operates to generate said frequency control signal and said modulation protocol control signal by comparing said operating characteristics with said user defined criteria."

72.    The Getac Accused Products include an adaptive control circuit that generates a frequency control signal and a protocol control signal as set forth above in ¶¶ 35-36.

73.    As a direct and proximate consequence of Defendants' infringement, Anton has been injured in its business and property rights, and has suffered injury and damages for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate for such infringement, but in no event less than a reasonable royalty.

## Infringement of the '985 Patent

74.    Defendants have infringed at least claim 1 of the '985 Patent in violation of 35 U.S.C. § 271 through, among other activities, making, using, offering to sell, and/or selling the Accused Products.

75.    Defendants' infringing technology and products include without limitation their A790, B300, M220, M230, S400, S410, V100, V110, V200, and X500 laptops and convertible notebooks, their E100, E110, F110, RX10, RX10H, T800, and Z710 tablets, their X500 Server, and their PS236, PS336, and PS535F handheld devices.

76.    Claim 1 is an exemplary infringed claim. Its preamble states "A multi-modal device for facilitating wireless communication over any one of a plurality of wireless communication networks at least some of which may be available and operating at a given time and location using differing radio frequency modulation protocols and over differing radio frequencies, comprising:." This is the preamble of the claim, and not a limitation that needs to be satisfied to show infringement. Generally speaking, however, Getac supplies multi-modal devices that facilitate communication over a plurality of wireless communication networks, operating at a given time and location, using different

**COMPLAINT**

frequencies and different transmission protocols such as different 802.11 network protocols (*e.g.* 802.11a, 802.11b, 802.11g and 802.11n) and different broadband network protocols (*e.g.* 3G and 4G/LTE).

77.    The Getac devices, listed above, have embedded Wi-Fi modules and operating system software (such as Windows 7, Windows Vista, or Google Android) and other Wi-Fi network access control software that control access to different Wi-Fi networks. Some of these Wi-Fi capable portable devices are also supplied by Getac with wireless broadband capability enabled by built-in wireless broadband modules and broadband connection manager software (such as Windows 7, Vista or Mobile) that are adapted to access different cellular networks using different frequencies and protocols.

78.    Getac's Wi-Fi and broadband capable portable computers include multi-modal wireless components that facilitate wireless communication over any one of a plurality of wireless communication networks (*e.g.* Wi-Fi networks and/or 3G and 4G/LTE networks) at least some of which may be available and operating at a given time and location using differing radio frequency modulation protocols and using differing radio frequencies.

79.    After the preamble, the first limitation of claim 1 states "a frequency agile radio transceiver operating at any one frequency of a plurality of radio frequencies appropriate for each of the plurality of wireless communication networks, said one frequency selected in response to a frequency control signal."

80.    The Getac Accused Products include frequency agile transceivers as set forth above in ¶¶ 27-29.

81.    After the first limitation, the second limitation of claim 1 states "a digital interface circuit for interconnecting said frequency agile radio transceiver with external digital signal processing devices to allow digital signal information to be sent and received over said frequency agile radio transceiver."

---

18

**COMPLAINT**

82.    The Getac Accused Products include a digital interface circuit as required by this claim element as set forth above in ¶ 31.

83.    After the second limitation, the third limitation of claim 1 states "protocol agile operating circuit means for operating said frequency agile radio transceiver and said digital interface circuit in accordance with any one modulation protocol of a plurality of modulation protocols, said one modulation protocol selected in response to a protocol control signal."

84.    The Getac Accused Products include a protocol agile operating circuit means as set forth above in ¶ 33.

85.    After the third limitation, the fourth limitation of claim 1 states "adaptive control means for determining which wireless communications networks are available at a given location and time, for accessing a selected wireless communication network, for communicating with said selected wireless communication network to determine on a real time basis the operating characteristics of the wireless communication network, and for generating the frequency control signal and the protocol control signal in response to a user defined criteria to cause the device to communicate with the selected wireless communication network using a frequency and modulation protocol suitable for transmission of said digital signal information over said selected wireless communications network."

86.    The Getac Accused Products include an adaptive control means as set forth above in ¶¶ 35-36.

87.    After the fourth limitation, the fifth limitation of claim 1 states "input means for receiving said user defined criteria, said user defined criteria comprising at least one of the cost of using the wireless communication network, the quality of the wireless communication network, the potential for being dropped by the wireless communication network, and the security of the wireless communication network."

19
**COMPLAINT**

88.    The Getac Accused Products include input means as set forth in ¶ 52.

89.    After the fifth limitation, the sixth and final limitation of claim 1 states "wherein said adaptive control means operates to generate said frequency control signal and said modulation protocol control signal by comparing said operating characteristics with said user defined criteria."

90.    The Getac Accused Products include an adaptive control means that generates a frequency control signal and a protocol control signal as set forth above in ¶¶ 35-36.

91.    As a direct and proximate consequence of Defendants' infringement, Anton has been injured in its business and property rights, and has suffered injury and damages for which it is entitled to relief under 35 U.S.C. § 284 adequate to compensate for such infringement, but in no event less than a reasonable royalty.

**Inducement of Direct Patent Infringement**

92.    Defendants have infringed the Anton Patents indirectly through acts of inducement.

93.    Defendants' infringing products include multi-mode Wi-Fi enabled and broadband-capable portable computers, laptop computers, tablets, and handheld devices. In addition to Getac's direct infringement, Getac's customers, who used their multi-mode Wi-Fi enabled and broadband-capable devices, also directly infringed the Anton Patents. Defendants knew of the Anton Patents at least as early as December 30, 2011, the date the notice of infringement was sent to Getac Technology Corporation and Getac USA. Defendants continued to instruct their customers how to use the Accused Products in an infringing manner after being advised of the Anton Patents, being provided detailed claim charts, and being aware of the infringement of the Anton Patents.

94.    Defendants have knowingly and intentionally actively aided, abetted and induced others to infringe (such as its customers, users and/or business partners in this judicial district and throughout the United States). Getac induced infringement by inviting

**COMPLAINT**

customers to download (using Getac's downloadable drivers) and install and/or use connection manager software from third parties.

95.     Defendants knew that these customer acts constituted infringement, and induced that infringement *via*, for example, by installing special drivers and providing the same on Getac websites for downloading to assist in forming multi-mode devices including wireless LAN adapters for wirelessly accessing different Wi-Fi networks, and different broadband networks using different frequencies and different protocols in response to criteria provided by users.

96.     Defendants have sold their computers, knowing of the Anton Patents and with the specific intent that its customers infringe the Anton Patents.

97.     Defendants' indirect infringement by inducement has injured Anton.  Anton, therefore, is entitled to recover damages adequate to compensate it for such infringement, but in no event less than a reasonable royalty.

98.     Defendants' indirect infringement by inducement has been willful because Defendants have known of the Anton Patents and has nonetheless injured Anton.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Anton demands a trial by jury on all issues presented that can properly be tried by a jury.

## REQUEST FOR RELIEF

THEREFORE, Anton asks this Court to enter judgment against Defendants and against their subsidiaries, affiliates, agents, servants, employees and all persons in active concert or participation with Defendants, granting the following relief:

A.     An award of damages adequate to compensate Anton for the infringement that has occurred, together with pre-judgment interest from the date infringement began and post-judgment interest;

B.     All other damages permitted by 35 U.S.C. § 284; and

21

**COMPLAINT**

1      C.      Such other and further relief as this Court or a jury may deem proper and just.

2

3

4  Dated: October 6, 2016             Respectfully submitted,

5

6                           _____/s/_____

7                           William W. Flachsbart

                          Michael R. La Porte

8                           FLACHSBART & GREENSPOON, LLC

9

                         H. H. (Shashi) Kewalramani

10                          SHK LEGAL, APC

11                          Counsel for Anton Innovations, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                  22

                            **COMPLAINT**

28